# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**LEON STARKS**                                                                                  **Plaintiff**

v.                                                                                       Civil Action No. 1:05CV309-B-B

**THE COMMISSIONER OF**
**SOCIAL SECURITY**                                                                        **Defendant**

## MEMORANDUM OPINION

Plaintiff, Leon Starks, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding his application for Supplemental Security Income ("SSI") under Title XVI. The Court, having thoroughly considered the submissions of the parties, the administrative record and the applicable law, finds the decision of the Commissioner should be reversed for the reasons set out below.

## Administrative Proceedings

Plaintiff protectively filed an application for SSI benefits under Title XVI on April 10, 2003, alleging a disability onset date of January 5, 2002 (Tr. 51-54, 261). The applications were denied initially and on reconsideration (Tr. 24-35).

In a hearing decision dated April 29, 2005, an administrative law judge ("ALJ") found that Plaintiff was not disabled as defined in the Social Security Act (Tr. 15-23). The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 23, 2005 (Tr. 6-8). The ALJ's final hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

Plaintiff previously filed for SSI on August 28, 2000, an application that was denied initially, on reconsideration, and at the hearing level on January 4, 2002 (Tr. 15). The present ALJ stated that the previous application could not be re-opened per 20 C.F.R. § 416.1488 since two years had passed from the date of the initial determination (Tr. 15).

## Facts

Plaintiff was born June 5, 1961 (Tr. 52) and was 44 years of age at the time of the hearing decision on April 29, 2005 (Tr. 23). He completed high school and one full year of college (Tr. 63). Plaintiff previously worked as a furniture factory worker (Tr. 73). He alleged that he could no longer work due to back pain, blindness in one eye, seizures, nerve problems, feet problems, and depression (Tr. 57). However, after a careful review and evaluation of the medical evidence of record, the subjective testimony at the hearing (Tr. 253-70) and the testimony of a vocational expert ("VE") (Tr. 270-75), the ALJ found Plaintiff not disabled (Tr. 15-23). Contrary to Plaintiff's allegation of disability, the ALJ found that he had the residual functional capacity ("RFC") to perform a range of work activity that included light work with occasional bending, twisting at the waist, and no stooping, kneeling, crawling or climbing ladders (Tr. 22). She also found that Plaintiff had monocular vision, could not work around hazardous machinery, at unprotected heights, or on vibrating surfaces, and could not drive a motor vehicle (Tr. 22).

## Standard of Review

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a

2

conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

## **Law**

To be considered disabled and eligible for benefits, Plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1] *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious

3

(5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id*. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id*.; *accord Selders*, 914 F.2d at 618.

---

> impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).
>
> Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).
>
> Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## Analysis

For this appeal, Plaintiff raises three issues: 1) whether the hypothetical posed to the vocational expert ("VE") by the ALJ was incomplete; 2) whether the Commissioner erred when he failed to make credibility findings regarding the Plaintiff's subjective complaints of pain; and 3) whether the Commissioner erred when he failed to give consideration to all of Plaintiff's impairments in combination. Pl.'s Br. 1. Because the Court finds the case should be remanded for the reasons set out below, only Plaintiff's first issue is mentioned here.

Plaintiff argues that because the ALJ failed to give consideration to the effect his medication had upon his ability to function, the Commissioner's decision is not supported by substantial evidence and should, therefore, be reversed. Pl.'s Br. 3-4. Specifically, Plaintiff contends the ALJ failed to recognize that his medications for his dysthymic disorder (effective mood disorder), namely Wellbutrin and Lexapro, made him sleepy and, therefore, affected his ability to be gainfully employed. Pl.'s Br. 3-4. The Court agrees with Plaintiff. The Court further finds that though the ALJ determined Plaintiff's dysthymic disorder was severe (Tr. 19, 22), she failed to consider the effect of this impairment and others on Plaintiff's ability to work as well. Furthermore, though the record indicates Plaintiff took Dilantin for a seizure disorder, the ALJ made no findings whatsoever regarding this condition.

5

*Effect of Plaintiff's Dysthymic Disorder on His Ability to Work*

The medical evidence shows Plaintiff underwent a comprehensive mental evaluation performed by Phillip Drumheller, Ph.D., on August 18, 2003 (Tr. 190-94). Plaintiff reported independent activities of daily living (Tr. 191). He also reported that he had not been drinking alcohol since May 2003 and had no present mental health care (Tr. 192). Plaintiff was oriented to person, place, and time (Tr. 192). His remote memory was believed to be fair, with recent recall being good (Tr. 192). Concentration was fair (Tr. 193). Plaintiff was diagnosed with dysthymic disorder, late onset, and alcohol dependence in early full remission (Tr. 193). Plaintiff's depression was said to be chronic but not severe (Tr. 192). Dr. Drumheller stated that Plaintiff would be no more than mildly impaired in his ability to perform routine, repetitive tasks or in his ability to interact with co-workers (Tr. 193). Plaintiff's ability to receive supervision was said to be no more than mildly impaired, with fair concentration (Tr. 194).

The ALJ determined that Plaintiff's dysthymic disorder was severe (Tr. 19). Yet, nothing in the ALJ's decision indicates she considered whether this nonexertional impairment affected Plaintiff's ability to perform work activities. When a claimant suffers from a combination of exertional and nonexertional impairments, the Commissioner is required to "rely upon expert vocational testimony or other similar evidence" to determine whether there exists other work in the national economy that the claimant is capable of performing. *Scott v. Shalala*, 30 F.3d 33 (5th Cir. 1994). A "nonexertional" limitation is one that affects a claimant's ability to meet the non-strength demands of a job. 20 C.F.R. § 404.1569a(c)(1).

The ALJ's determination that Plaintiff's dysthymic disorder was severe is based in large part on Dr. Drumheller's report. However, when presenting hypothetical questions to the VE, the

ALJ made no mention of the effects of this impairment (Tr. 270-75). The ALJ's first hypothetical question to the VE included only Plaintiff's limitations as regards lifting, sitting, standing, bending, etc. and certain environmental limitations (Tr. 273). Based upon this RFC, the VE opined that Plaintiff could not return to his past relevant work. *Id.* Next, when asked what jobs Plaintiff could perform with such a RFC, the VE replied that examples included dowel inspector, fishing lure assembler and storage rental clerk. *Id.* In a second hypothetical, the ALJ added the fact that the claimant could only see with one eye (Tr. 274). The VE responded that the claimant would still be able to perform the foregoing jobs if vision in the unaffected eye were normal. *Id*. In a third hypothetical, the ALJ added the limitation of only occasional gripping and handling. *Id*. The VE stated there would be no jobs the claimant could perform (Tr. 275). The VE was never asked to give an opinion with regard to the additional limitation of only "fair concentration" as found by Dr. Drumheller. Based on this, the case should be remanded to the Commissioner for further proceedings, including a determination of the effect of Plaintiff's dysthymic disorder on his ability to perform work activities.

*Side Effects of Plaintiff's Medication*

During the administrative hearing, Plaintiff testified he took Lexapro and Wellbutrin twice a day for his depression and nerve problems (Tr. 261). He said these medications made him sleep most of the day (Tr. 261, 264). The ALJ did not include this alleged side effect in any hypothetical question posed to the VE during the hearing (Tr. 273-275).

The Social Security Administration regulations require an ALJ to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] takes or has taken to alleviate [ ] pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv). In this case, the medical

7

evidence establishes the fact that Plaintiff suffered from dysthymic disorder. And, records from his treating physician, Dr. Andrzej Wartak, indicate that Plaintiff did not begin a combination of Wellbutrin and Lexapro for treatment of this condition until October 2004 (Tr. 213-216). The Court can find nothing in the record that controverts Plaintiff's testimony that these drugs made him sleep most of the day. Indeed, all reports of daily activities which conflict with Plaintiff's hearing testimony predate that testimony (Tr. 97-99, 191). Accordingly, the ALJ erred in failing to consider the adverse side effects from Plaintiff's prescribed medications on his ability to work, and the case should be remanded. *See Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).

*Plaintiff's Seizure Disorder*

Lastly, it should be noted that the ALJ made no finding regarding the effects of Plaintiff's seizure disorder on his ability to perform other work. The Regulations require that if any severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523 and 416.923.

Records from Plaintiff's treating physician show he took Dilantin for a seizure disorder continuously from April 2002 until January 2005 (Tr. 112-125, 209-248). At the hearing, Plaintiff testified he was taking Dilantin at least three times a day to control his seizures (Tr. 265). He said he couldn't say the condition was controlled by the medication because he never knew when a seizure was going to "hit" him (Tr. 269). Though the ALJ presumably found Plaintiff's seizure disorder to be non-severe (Tr. 17, 19), nothing in the record indicates that any consideration was given to what effect this condition or the medication taken to control it had on Plaintiff's ability to do work other than his past relevant work (Tr. 270-75).

Based on the foregoing, this case should be remanded for the following purposes:

1. The ALJ should properly determine the effects, if any, of Plaintiff's seizure disorder on his ability to perform work activities.

2. The ALJ should be required to determine whether Plaintiff suffers any adverse side effects from the use of Wellbutrin, Lexapro and Dilantin and the effect of any drug side effects on his ability to perform sustained work activity. As such, it is recommended that the ALJ consult the opinion of a pharmacologist or other suitable expert in making such a determination.

3. The ALJ should be required to tender to a VE a coherent set of hypothetical questions which reasonably include *all* of Plaintiff's medically determinable impairments and limitations.

## Conclusion

For the foregoing reasons, the Commissioner's decision that Plaintiff was not disabled at anytime through the date of the ALJ's decision is not supported by substantial evidence. Therefore, the case should be reversed and remanded for further proceedings not inconsistent with this opinion.

**THIS**, the 28th day of March, 2007.

/s/ Neal Biggers
_____
**NEAL B. BIGGERS, JR.**
**SENIOR U.S. DISTRICT JUDGE**